UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

ANTHONY CONLEY,
  Plaintiff, )

   v.              10-cv-02013

KEITH ANGLIN, Warden, VICTOR CALLOWAY,
Assistant Warden, MARY MILLER, Health
Care Administrator, CHRISTINA MILES,
Nurse Of Danville C.C., DOCTOR AMEJI,
Ex-Doctor of Danville C.C., and TERRY FEUYO,
Ex-Nurse Director of Danville C.C.,)
  Defendants.

MEMORANDUM OPINION AND ORDER

  Before the court are the defendants, Bashirahmed Ameji, M.D., an Terry Fueyo's summary judgment motion [41] and the plaintiff's response [45].

Standard

  Summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Any discrepancies in the factual record should be evaluated in the nonmovant's favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (*citing Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970)). The party moving for summary judgment must show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

  "Summary judgment is the 'put up or shut up' moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." *Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 901 (7th Cir. 2000). "If a party . . . fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it." Fed. R. Civ. P. 56(e). A party opposing summary judgment bears the burden to respond, not simply by resting on its own pleading but by "set[ting] out specific facts showing a genuine issue for trial." *See* Fed. R. Civ. P. 56(c). In order to be a "genuine" issue, there must be more than "some metaphysical doubt as to the material facts." *Matsushita Elec. Ind. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If

1

[the nonmovant] does not [meet his burden], summary judgment should, if appropriate, be entered against [the nonmovant]." Fed. R. Civ. P. 56(e). Further, "[t]he plaintiff cannot merely allege the existence of a factual dispute to defeat summary judgment …. Instead, he must supply evidence sufficient to allow a jury to render a verdict in his favor." *Basith v. Cook County*, 241 F.3d 919, 926 (7th Cir. 2001). Specifically, the non-moving party "must present sufficient evidence to show the existence of each element of its case on which it will bear the burden at trial." *Filipovic v. K&R Express Systems, Inc*., 176 F.3d 390, 390 (7th Cir. 1999). Failure by the non-movant to meet all of the above requirements subjects him to summary judgment on his claims.

Affidavits must be based on the personal knowledge of the affiant and "set out *facts* that would be admissible in evidence." Fed. R. Civ. P. 56(c)(4) (emphasis added). Personal knowledge may include inferences and opinions drawn from those facts. *Visser v. Packer Eng. Assoc., Inc.*, 924 F.2d 655, 659 (7th Cir. 1991). "But the inferences and opinions must be grounded in observation or other first-hand personal experience. They must not be based on flights of fancy, speculations, hunches, intuitions or rumors remote from that experience." *Visser*, 924 F.2d at 659. It is also well settled that "conclusory allegations and self-serving affidavits, if not supported by the record, will not preclude summary judgment. Keri v. Barod of Trustees of Purdue University, 458 F.3d 620, 628 (7th Cir.2006)(*citing Haywood v. N. Am. Van Lines, Inc.,* 121 F.3d 1066, 1071 (7th Cir.1997).

Background

Plaintiff alleges that he suffered deliberate indifference to his serious medical needs at the hands of Dr. Ameji and Terry Fueyo. Specifically, Plaintiff alleges that he suffered complications after having blood drawn from his left arm. Plaintiff alleges that the blood draw caused him to have a blood clot that caused him to suffer multiple heart attacks. Plaintiff has clarified in his answers to Defendants Ameji and Fueyo's interrogatories that their treatment of the alleged blood clot is his only basis for his deliberate indifference claim. Further, Plaintiff has clarified that he does not make an excessive force claim against Dr. Ameji or Terry Fueyo. (See Exhibit 1, Plaintiff's answers to Defendant Ameji's interrogatories; and Exhibit 2, Plaintiff's answers to Defendant Fueyo's interrogatories, which can be found attached to Defts.' motion. Based on Plaintiff's clarifications, Defendants Ameji and Fueyo argue that they are entitled to summary judgment. Defendants assert that Plaintiff has failed to exhaust his administrative remedies as to his claims of deliberate indifference and failure to intervene. Defendants assert that Plaintiff does not mention Dr. Ameji or Terry Fueyo in the grievance that he attempted to appeal to the Director of the Illinois Department of Corrections.

Undisputed Material Facts

1. Gina Allen is employed within the Office of Inmate Issues for the Illinois Department of Corrections ("the Department"). The Administrative Review Board ("ARB") is a subdivision of the Office of Inmate Issues, of which she is a chairperson. As an Administrative Review Board chairperson, her duties involve, among other things,

reviewing and responding to grievances filed by Department inmates in the manner set forth herein. (Allen Affidavit.)
2. Inmates incarcerated within the Department may file grievances in accordance with Department Rule 504F: Grievance Procedures for Committed Persons (20 Ill. Admin. Code 504.800, *et seq*.). Subject to certain exceptions, which are set forth by regulation, an inmate must first attempt to resolve his grievances through his counselor. A grievance form is available to inmates for submitting their grievances. The grievance form contains an area for the counselor to respond. After responding to the inmate, the counselor returns the grievance form, with his response, to the inmate. If the grieved issue remains unresolved after the counselor has responded, the inmate may forward this grievance with the grievance counselor's response to the facility grievance officer designated by the Chief Administrative Officer ("CAO"). The CAO is often the warden. The grievance officer may personally interview the inmate and/or other witnesses as deemed appropriate and obtain documents to determine the merits of the inmate's grievance. Upon completion of such investigation, the grievance officer's conclusions and, if appropriate, recommended relief, is forwarded to the CAO. The CAO's, or the CAO's designee's, decision is then submitted to the grieving inmate. (Allen Affidavit.)
3. If after receiving the CAO's decision, the inmate feels the issue is still unresolved, he may appeal in writing to the Director of the Department by submitting the grievance officer's report and the CAO's decision. The ARB, as the Director's designee, reviews the appeal and first determines whether the inmate's grievance can be handled without the necessity of a hearing. If so, the inmate is so advised. Other matters are scheduled for an ARB hearing involving an interview of the grieving inmate, examining relevant documents, and at the ARB's discretion, calling witnesses. The ARB submits a written report of its findings and recommendations to the Director or the Director's designee who then reviews the report and makes a final determination on the grievance. A copy of the ARB's report and the Director's final decision is sent to the inmate who filed the grievance. The originals of these documents are maintained in the ARB's files. Department Rule 504F: Grievance Procedures for Committed Persons (20 Ill. Admin. Code §504.800, *et seq*.) provides no further means for review beyond this step. If the inmate has not followed procedure, and for example, has not first attempted to resolve the issue through his counselor or grievance officer, then the original grievance is returned to him along with a form describing the procedural deficiency. (Allen Affidavit.)
4. Certain issues may be grieved directly to the ARB, rather than first through a counselor or grievance officer. These issues include: a) decisions involving the involuntary administration and psychotropic medications; b) decisions regarding protective custody placement, including continued placement in, or release from, protective custody; c) decisions regarding disciplinary proceedings which were made at a facility other than the facility where the inmate is currently assigned; and d) other issues, except personal property issues, which pertain to a facility other than the facility where the inmate is

 currently assigned. These grievances are then handled in accordance with the procedures described in paragraph 3 above. (Allen Affidavit.)
5. An inmate may request a grievance be handled on an emergency basis by forwarding the

grievance directly to the CAO rather than to a counselor or grievance officer. If the CAO determines that there is a substantial risk of imminent personal injury or other serious or irreparable harm to the inmate, the grievance may be handled on an emergency basis. An inmate may appeal the CAO's decision in such a situation to the ARB. The appeal is then handled in accordance with the procedures described in paragraph 3 above. (Allen Affidavit.)
6. The grievance procedure may not be utilized for complaints regarding decisions which are outside the Department's authority such as parole decisions, clemency or orders regarding the length of sentences or decisions which have been reviewed by the Director. (Allen Affidavit.)
7. At the request of Matthew Lurkins of Heyl, Royster, Voelker & Allen, Gina Allen has searched the ARB's records for grievances from Anthony Conley, Register No. K-57454, from February 24, 2008 through the present which mention medical issues and referencing Dr. Bashir Ameji or Terry Fueyo. During this time frame, there were no grievances meeting this criteria received from Mr. Conley. Plaintiff did file five grievances during this time period that referenced his medical care. Copies of those grievances received by the ARB from Mr. Conley are attached to Defendants' Motion. None of the grievances concerned Dr. Ameji or Terry Fueyo, however. Thus, although the Illinois Department of Corrections' grievance procedures provided Mr. Conley with administrative remedies for any perceived problem with Dr. Ameji or Terry Fueyo, Mr. Conley failed to take all of the steps prescribed in the Department's grievance procedure and did not appeal to the ARB, thereby failing to avail himself of the administrative remedies that were available to him. (Allen Affidavit.)
8. The grievance which appears to be the most relevant to the allegations made in this case is the grievance regarding a Nurse Tina drawing blood from his left arm. This grievance was denied as untimely because Mr. Conley did not submit it to the ARB within 30 days of receiving the Grievance Officer and Chief Administrative Officer's signatures. (Allen Affidavit.)
9. Further, this grievance was not properly filed because Plaintiff added additional issues and statements to the grievance after it had been denied by the Grievance Officer and CAO. Specifically, Mr. Conley added additional complaints on May 6, 2008 to the original language in the grievance after he received the CAO response. (Allen Affidavit.)

Discussion and Conclusion

Pursuant to the Prison Litigation Reform Act, all prison inmates bringing an action under 42 U.S.C. § 1983, with respect to prison conditions, must first exhaust all administrative remedies that may be available to them before being allowed to proceed with the lawsuit. 42 U.S.C. § 1997e(a). Section 1997e(a) specifically provides:

> No action shall be brought with respect to prison conditions under § 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies are exhausted.

4

The statute is "too clear" and suits "must be dismissed" if administrative remedies are not followed. Perez v. Wisconsin Dept. of Corrections, 182 F.3d 533, 534 (7th Cir. 1999). In the Illinois Department of Corrections, there is a grievance procedure. The grievance procedure requires the prisoner to file a timely grievance regarding an issue at the institutional level; receive a response from the Chief Administrative Officer of the institution (Warden) and if the Warden denies the grievance, appeal the denial to the Administrative Review Board (ARB). 20 Ill. Admin. Code § 504.850. Therefore, it is not until the ARB has made a decision that a prisoner has exhausted his administrative remedies.

The only grievance Plaintiff properly exhausted involving Dr. Ameji and Terry Fueyo was regarding an asthma inhaler. However, the plaintiff does not make any allegations regarding an asthma inhaler in his complaint. Plaintiff's grievance regarding his blood pressure medication being delayed one month does not mention Dr. Ameji or Terry Fueyo. According to IDOC regulation a grievance filed must specifically name the party complained about specifically, if known. See 20 Ill. Adm. Code § 504.810(b). Additionally, Plaintiff has failed to exhaust his administrative remedies as is in the manner that is required by Illinois Department of Corrections Administrative Rules. Specifically, Plaintiff was to appeal the finding of the CAO within 30 days of the decision. However, Plaintiff's appeal was untimely. He did not meet the 30 day deadline. Further, even if Plaintiff had exhausted his administrative remedies, he failed to mention Dr. Ameji or Terry Fueyo in any manner in his grievance. According to Illinois Department of Corrections Rules, Plaintiff must specifically identify the staff by name when known against whom he has a grievance. *See* Ill. Admin. Code tit. 20, § 504.810(b).

According to the grievance filed by Plaintiff, he merely grieved the fact that LPN Tina allegedly injured his left arm during a blood draw. In fact, Plaintiff notes in his grievance that he had not suffered any side effects from the blood draw but he was merely filing the grievance in order to "cover myself in case there is something major wrong with my arm". Accordingly, Plaintiff has not properly exhausted the medical treatment provided to him by Terry Fueyo or Dr. Ameji. Neither of the moving Defendants are specifically named in the grievance, nor are they referenced in any way.

The court notes that Plaintiff has failed to serve the defendant Christine Miles. He raises a claim against Ms. Miles alleging she was deliberately indifferent and used excessive force when she drew blood from his left arm which left a clot in his wrist. However, for the same reasons discussed above as to Dr. Ameji and Terry Fueyo, the court finds the Plaintiff did not exhaust administrative remedies for his claim that the nurse Tina, later identified as Christine Miles, was deliberately indifferent to his serious medical needs. His grievance regarding the

blood draw was not timely appealed. Therefore, pursuant to 42 U.S.C. ¶ 1997e(a), the court dismisses Christine Miles as a defendant in this lawsuit.

Based on the foregoing, it is ordered:

1. The court finds Plaintiff has failed to exhaust administrative remedies. Pursuant to 42

U.S.C. Section 19973(a) and Fed. R. Civ. Pro. Rule 56, Defendants Ameji and Fueyo's summary motion is granted. Further, pursuant to 42 U.S.C. ¶ 1997e(a), the court dismisses Christine Miles as a defendant in this lawsuit. The clerk of the court is directed to terminate Ameji, Fueyo and Miles, forthwith. The parties are to bear their own costs.

2. If the plaintiff wishes to appeal this dismissal, he must file a notice of appeal with this court <u>within 30 days of the entry of judgment</u>. Fed. R. App. P. 4(a)(4). A motion for leave to appeal *in forma pauperis* should set forth the issues the plaintiff plans to present on appeal. *See* Fed. R. App. P. 24(a)(1)(C). If the plaintiff does choose to appeal, he will be liable for the $455.00 appellate filing fee irrespective of the outcome of the appeal. Furthermore, if the appeal is found to be non-meritorious, the plaintiff may also accumulate a strike under 28 U.S.C. 1915(g).

Enter this 15th day of July 2011.

**\s\Harold A. Baker**

_____
Harold A. Baker
United States District Judge